UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL CATANIA ET AL.

VERSUS

ANCO INSULATIONS, INC. ET AL.

CIVIL ACTION

NO. 05-1418-JJB

**RULING**

The matter before the Court is a motion (doc. 201) to exclude the expert opinion of Plaintiff's expert, filed by defendant, Pharmacia Corp. ("Pharmacia"). Plaintiffs have filed an opposition. (Doc. 216). There is no need for oral argument. For the following reasons, Pharmacia's motion is DENIED.

Barbara Catania ("decedent") passed away as a result of mesothelioma. She allegedly contracted mesothelioma through exposure to asbestos fibers embedded in the clothing of three uncles. After Decedent's death, Plaintiffs brought suit seeking damages for loss of support. As part of this suit, Plaintiffs seeks to introduce testimony of Shael Wolfson, an economics expert.

Pharmacia objects to the introduction of Wolfson's testimony, asserting that he did not follow the methodology that he cited in his report. Furthermore, Pharmacia alleges that Wolfson incorrectly assumed that as a result of Decedent's death, Plaintiff would no longer receive any Louisiana State Employees' Retirement System ("LASERS") benefits. Because Wolfson's testimony is inadmissible, Pharmacia argues, the Court should grant it summary judgment on the issue of damages from loss of support.

1

Analysis

In Wolfson's report, he establishes a personal maintenance factor, which measures how much income Decedent would have used from any future earnings in order to maintain herself.[1] Wolfson used a factor of 30% based on a chart of such factors published by Ruble, Patton & Nelson in the Journal of Forensic Economics, which takes into account both family size and family income ("Ruble Method").[2] Wolfson then multiplied that factor by $36,587, Decedent's income in 2004, to reach a personal maintenance of $10,976, resulting in a loss of support of $25,611.[3] Pharmacia argues that the Ruble Method actually calls for a personal maintenance factor of 15.6% of total gross family income.[4] Multiplying Pharmacia's factor by the $124,219 earned by Decedent's family in 2004 equals a personal maintenance of $19,378 and a loss of support of $17,209, roughly $8,000 less than that computed by Wolfson.[5]

Pharmacia argues that this discrepancy results because Wolfson did not follow the Rubble Method that he cited; because he could not cite any alternate methodology for his conclusions, Pharmacia argues that he violates Rule 26 of the Federal Rules of Civil Procedure. Rule 26 states, in pertinent part, that a report "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the data or other

---

[1] Doc. 201-3 at 3.
[2] *Id.*
[3] *Id* at 5.
[4] *Id.*
[5] *Id* at 6.

2

information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B).

Contrary to Pharmacia's assertions, Wolfson has complied with the rule. Not only did he provide a complete statement of the opinions that he plans to express and his reasons for giving them, but he also cited the Rubble Method as the data that he has *considered* in forming those opinions. Even though his ultimate method did not strictly follow the Rubble Method, he clearly considered that method. Therefore, the Court finds that Plaintiffs have complied with Rule 26.

Pharmacia also argues that Wolfson's testimony is unreliable under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). *Daubert* sets forth the following factors for courts to consider when determining the admissibility of expert testimony: whether the subject can be (and has been) tested, whether the theory or technique has been subjected to peer review or publication, whether there is a known or potential rate of error, and whether the theory has been met with a particular degree of acceptance within the scientific community. *Id.* at 593. This test, however, provides flexibility in that the overarching goal is to determine the testimony's scientific validity. *Id* at 594. Therefore, Wolfson need not meet all of these factors. See *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 247-248 (5th Cir. 2002). Rather, an expert may testify as to conclusions resting upon experience and personal observation. *Id.*

Wolfson, indeed, provided an extensive list of qualifications in his area of expertise, including numerous higher degrees in economics.[6] Furthermore, he has taught economics at Southeastern Louisiana University and Xavier University in New Orleans, has various publications in the field of economics, and has testified before various courts in Louisiana.[7]  Thus, Wolfson is clearly qualified to testify as an expert in the field of economics and offer conclusions based upon that expertise.  Of course, Pharmacia may attack his evidence through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

A *Daubert* inquiry, however, must focus "solely on principles and methodology, not on the conclusions that they generate." *Id* at 595.  Here, Pharmacia, has not adequately attacked the method used by Wolfson with any expert testimonies or facts that discredit Wolfson's methodology.  Instead, Pharmacia asserts, without providing any authority, that by deviating from a considered method Wolfson cannot qualify as an expert witness.  In contrast, Plaintiff provides authority where courts recognized methods that did not factor in the surviving spouse's income. *See, e.g., Cheatham v. City of New Orleans,* 378 So. 2d 369, 379 (La. 1979).  Because Wolfson's methods have been accepted by other courts, and Pharmacia has not discredited these methods, the Court finds that Wolfson's testimony is admissible.

---

[6] Doc. 216 at 2,3.
[7] *Id* at 3.

4

Pharmacia also asserts that Wolfson's incorrect assumption regarding LASERS benefits renders his opinions insufficiently reliable. Because Wolfson did not have the correct data regarding Decedent's LASERS benefits, he incorrectly calculated damages.[8] That error, however, does not render his testimony unreliable; instead, Wolfson must update his analysis and report based on accurate information.

Because the Court finds that Wolfson is qualified to testify regarding the loss of support, the Court also finds the existence of a genuine dispute as to a material issue. Therefore, summary judgment is inappropriate on this issue.

## Conclusion

The Court finds admissible Wolfson's expert testimony regarding the loss of support created by Decedent's death. Accordingly, Pharmacia's motion (doc. 201) to exclude Plaintiffs' expert testimony and for partial summary judgment is hereby DENIED.

Signed in Baton Rouge, Louisiana, on November 17th, 2009.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[8] Doc. 201-3 at 8.